## Stevenson Company, Limited, Appellant, *v.* Walter S. Sample.

*Auditor—Conclusiveness of finding—Partnership.*

Where no clear error appears in an auditor's finding of fact and the finding is concurred in by the court below, it will not be reversed where there is evidence to support it, although the proof may not seem as conclusive to the Supreme Court as it did to the auditor.

Argued Feb. 11, 1896. Appeal, No. 450, Jan. T., 1895, by plaintiff, from order of C. P. Delaware Co., March T., 1894, No. 18, overruling exceptions to auditor's report distributing proceeds of sheriff's sale of defendant's property. Before WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Exceptions to auditor's report.

The auditor, Hiram Hathaway, Jr., reported as follows:

First. The amount to be distributed among the contesting parties is $1,347.30. This was raised at a sheriff's sale of properties at Seventh and Hayes streets, in South Chester, hereinafter mentioned and described, upon a fi. fa. issued upon a judgment confessed by Walter S. Sample to Stevenson Company, Limited, for $4,020.67, dated the 14th day of October, A. D. 1893, the title of the property being in the name of Sample. Said judgment was entered December 5, 1893. The sale took place at the office of Samuel D. Clyde, Market square, Chester, Pa., on January 20, 1894, and the property was sold to Charles Morgan and Harry Stevenson—Morgan buying the four houses and Harry Stevenson buying the vacant lot—the aggregate price being $1,461, subject to a mortgage of $3,000, covering the whole property.

The sheriff's deed, dated the 2d day of February and acknowledged February 2, 1894, conveys the whole property to Charles Morgan, and recites him as living in Philadelphia, whereas the testimony shows that he lived in the far west, a most significant fact, and more so as the evidence shows that Mr. Wm. B. Broomall received the earnest money, $250, from S. Price Stevenson, paid it to the sheriff, and returned the amount to S. Price Stevenson, after having gotten a check for the amount of Mr. Harry Stevenson.

Hon. John B. Hinkson, attorney for mechanic's lien creditors, ruled the money into court, as will appear, on account of the contentions arising among the parties, hence the necessity for this investigation.

The following claims were presented to your auditor for consideration:

By W. B. Broomall, Esq.: Stevenson Company, Limited, total claim, $2,741.90.

This amount includes several small claims of subcontractors, bought by the Stevenson Company, as shown by the evidence. For instance: that of Mosteller, for $———, amounting to $———, and that of George Farraday, for $ ———, amounting to $———. But we need not go into any discussion of these, as it is admitted that they could not be recovered.

By Hon. John B. Hinkson, attorney for mechanic's lien creditors, as follows:

Sometime in August, 1892, Mr. S. Price Stevenson, of the firm of Stevenson Company, Limited, called upon Mr. Thomas W. Scott, who was then in the real estate business in Chester, and asked Mr. Scott, among other matters, if he expected to go into any speculative building operations. After several interviews, Mr. Scott and Mr. Stevenson agreed to go into a partnership agreement, to build four houses upon a lot at the corner of Seventh and Hayes streets, in the borough of South Chester. Mr. Stevenson went so far as to call upon the Hon. William Ward to consult him with regard to the matter, and get him to write articles forming a limited partnership, but from the evidence it seems that Mr. Ward discouraged this plan, because it was simply for one transaction. No articles were written, but the lot was purchased from the Delaware County Real Estate Company, the title being put in the name of Walter S. Sample, the deed being dated October 13, 1892.

Upon this lot was a mortgage of $3,000, held by Amos Gart-side, of Chester. Operations were not commenced until the latter part of the year; indeed, it seems from the testimony of the witnesses, material men, that at the time the operations were under way, the credit of Mr. Scott was not good, and for that reason some of them declined to make a contract for work with him; they preferred to go to Mr. Stevenson, and he promised on behalf of the Stevenson Company, Limited, to be responsible for their claims, and indeed, after the buildings were completed, and the creditors were clamoring for their money, Mr. Stevenson bought some of their accounts, most of them at a discount, paying generally partly in cash and partly in trade. It was expected that enough money could be raised on mortgage to pay off the accounts and sell the houses, but after repeated attempts by Mr. Scott, to raise the money required he found he was unable to do so, and consequently the venture was a failure. Mr. S. Price Stevenson denies that any agreement was entered into, or that he or his company were a party to the operation as a partner, and that no consummation of the agreement was ever made and that he is simply a creditor of Mr. Scott and Mr. Sample precisely as the other material men.

The testimony, however, leads your auditor to believe and to find that Mr. S. Price Stevenson and his company were in fact engaged with Mr. Scott in the project. Stevenson for himself, and representing his company, was at the buildings almost daily, as has been testified to, during their construction, and they certainly had an interest in the building operations as well as in the premises originally purchased. After matters got into such a shape that all were sure it was a losing venture, Mr. Stevenson called upon Mr. Walter S. Sample, in whose name the title to the property was (and let me state here Mr. Scott testified that it was in the name of Sample because of his, Scott's, financial embarrassment), and desired Sample to sign a judgment note in favor of the Stevenson Company, Limited, for the amount of their claim against the houses. Eventually this was done, the judgment note entered, the writ issued, and the property sold under a fi. fa. on January 20, 1894.

On December 4, 1893, Mr. Stevenson and Mr. Sample entered into an agreement by which Sample agreed to convey the property in question to S. Price Stevenson, and for this agree-

ment, a copy of which is hereto attached, Sample was to receive $25.00 upon the execution of the agreement, which he did receive, and a remaining $75.00 was to be paid upon the signing and delivery of the conveyance. The conveyance, however, was never made, signed, or delivered, and the $75.00 never paid.

After receiving the $25.00 from Mr. Stevenson, Mr. Sample testified that he consulted his mother, and became convinced that he had done wrong in confessing the judgment, and making the agreement. He had already delivered the judgment note, and went to Mr. Stevenson and offered to return the $25.00. This Mr. Stevenson refused.

The mortgage held by Mr. Amos Gartside was assigned at the direction of Mr. S. Price Stevenson to Mr. Thomas Bohannon, a merchant doing business in the city of Philadelphia, with whom Mr. S. Price Stevenson was connected in mercantile pursuits. The consideration for this assignment was paid by Mr. Stevenson, and although he was at the time indebted to Mr. Bohannon on other accounts, Mr. Bohannon gave him a note for this amount of the mortgage, and from the testimony it appears that the note has not been paid, though long overdue, and no demand has ever been made for the payment. On the day of the sale, January 20, 1894, which was held in the city of Chester on Market square, a lawyer by the name of Kendall B. Stokley, with an office at Walnut street, Philadelphia, appeared, and gave notice as a fact that the vacant lot alongside of the house had been released from the lien of the mortgage, and that the houses were liable for the whole amount of the mortgage. This, placing a larger incumbrance upon the houses, deterred bidders, and the houses were knocked down to a man by the name of Charles Morgan, who resides in Trinidad, Colorado.

It seems that Mr. Morgan was a friend of Mr. Harry Stevenson, a brother of Mr. S. Price Stevenson, and a member of the firm of Stevenson Company, Limited. Morgan was never seen by Mr. Henry Stevenson more than two or three times a year, meeting him casually in Philadelphia. Morgan was asked by Mr. Harry Stevenson if he desired to invest some money in real estate in Chester. Acting upon this suggestion he came to Chester to look at the properties; he directed Harry Stevenson to purchase it for him. Mr. Morgan had never been here before. He was a dealer in horses and cattle, and your auditor did not

have the benefit of his testimony as to how he holds title or when the purchase money was paid. The hand money it appears was furnished by Mr. S. Price Stevenson.

It must be admitted that the liens under the law, having been filed within the time specified within the acts of assembly, would take precedence over the judgment.

It must also be admitted that the Stevenson claim is in two parts, one for the original bill and one for the extra materials supplied. See act June 16, 1836, P. L. 696, sec. 10; Landis v. Mellinger, 7 Lancaster, 153; Kendig v. Landis, 7 Lancaster, 217, 238; Kendig v. Landis, 135 Pa. Rep. 612. Denkel's Estate, 1 Pearson, 213.

The question which your auditor thinks arises from the testimony for him to pass upon is as follows :

Is Stevenson Company, Limited, or S. Price Stevenson, to be permitted to participate in the distribution of the money paid into court, under the evidence, or should the mechanic's lien creditors, to the exclusion of the Stevensons, participate wholly in the distribution ?

If the Stevensons were partners to the transaction, as clearly in the mind of your auditor they were, they cannot be permitted to participate in the distribution of the claim; they must fall with Scott. If also they procured the lawyer, Kendall S. Stokley to make the announcement he did, they must be guilty of fraud; because there was no such release as was mentioned, and the mortgage remained a lien upon the vacant lot as well as upon the houses, and the notice was clearly given for the purpose of misguiding buyers. The houses being responsible for the whole debt under the notice.

The strictest examination of Mr. Stokley failed to elicit for whom he made the announcement; he declining to answer all questions as for whom he made the notice, or as to whom his clients were.

Your auditor will remark that whoever it was that procured Mr. Stokley to make this announcement, whose identity that gentleman concealed under the plea of professional secrets and courtesy, must have done so for the purpose of hurting the sale and placing the property, that is the houses, in a condition where they could be bought at less than their value, and in all probability by some one interested.

It was clearly a fraud, and must have been done by some one deeply interested. Who was it? Our investigation could go no further. We could only surmise.

*Nul prendra advantage de son tort demesne.*

No one shall take advantage of his own wrong.

*Injuria propria non cadet in beneficium facientis.*

One's own wrong shall not benefit the person doing it.

—Bouvier's Leg. Max.

Your auditor has carefully examined all the authorities submitted, which were very few, and the testimony is so exhaustive and explicit that he sees but one conclusion to arrive at. He believes and so reports that the Stevenson Company, or the Stevensons, were a party in interest—a partner—in the transaction and probably part owner, and were cognizant of the notice to be, and which was given at the sale. Either one proposition or the other would decide the issue. If the Stevensons were a party or part owners, or if they were guilty of fraud, they cannot participate in the distribution of the fund, and therefore your auditor decides that they are not entitled to any share, and recommends that it be distributed among the mechanic's lien creditors.

Exceptions filed by Stevenson Company, Limited, were dismissed by the court.

*Errors assigned* were in overruling exceptions to auditor's report.

*W. B. Broomall*, for appellant.

*J. B. Hinkson*, for appellee.—The finding of an auditor on the facts which has been received and approved by the court below will not be set aside in this court, except for flagrant error: Burrough's App., 26 Pa. 264; Lewis's App., 127 Pa. 127; Hess's Est., 150 Pa. 346; Fessenden's Est., 170 Pa. 631.

PER CURIAM, March 2, 1896:

The proof that the plaintiff was a partner in the erection of the buildings whose proceeds constitute the fund now for distribution does not seem to us as conclusive upon that subject as it did to the learned auditor. We remember however that

he had the witnesses before him, and that the court below after a hearing upon exceptions has concurred in his conclusions upon this subject.

Accepting the facts thus found, the legal conclusions drawn therefrom seem to us to follow logically. There is no such clear error in the treatment of the questions of fact by the auditor and the court below as requires us to reverse the judgment. It is accordingly affirmed.